07-3374, people versus the market. How are you? What's your name? My name is Nicholas Curran. I represent the defendant of Helen and Berkeley. I didn't quite get your name again. Nicholas Curran. Mr. Curran. Sir, step up and tell us who you are, please. I'm Patrick Connors. I'm the Chief of the State of Illinois. Thank you. Gentlemen, 15 minutes each side. Mr. Curran, have you argued here before? One other time, Your Honor. Well, good morning to you. Good morning. May it please the Court. Counsel. As I mentioned, my name is Nicholas Curran, and I represent the defendant appellant in this matter, Mr. Edward Leak. Mr. Leak was tried and convicted by a jury of first-degree murder and solicitation of murder for hire. He was sentenced by the trial court to 75 years imprisonment. This direct appeal follows. The evidence at trial established that the victim, Fred Hamilton, was shot and killed by two shooters. John Brown, one of the perpetrators, was pursued from the scene and cornered by Chicago police officers. A .40-caliber semi-automatic handgun was located across the alley from where Brown was apprehended. Ballistics testing established that this firearm was one of two weapons that was used to shoot the victim. Are you telling us this because it pertains to the disparity in the amount of proof available on the severance issue that you raised? Otherwise, or is it anecdotal? No, Your Honor. I'm merely trying to frame what I believe is the key issue in this case. Which is what? The mission of hearsay statements against the defendant. To establish the conspiracy? Exactly, through the testimony of Alfred Marley. And so, if it pleases the Court, I'll move forward. That's entwined with two issues that you have here, really. First, the hearsay itself, and then the fact that they were tried together. Or in separate jury trials, but at the same time. Let me cut to the chase a little bit here, at least as far as I'm concerned. Was there any direct testimony, not hearsay, but direct testimony, placing the defendant at the scene at the time of the shooting? I can tell you what the evidence did show. What's your position? The evidence showed there were phone records that were placed into evidence that suggested... I know, the 170 and the 30 on the day of the shooting. Was there any evidence that put the presence of the defendant in that shopping mall during the course of that shooting? Or was that all through Marley's hearsay? Your Honor, I would contend that there was no direct evidence that the defendant was at the scene. I think if you have anything more specific than that, it would be helpful. Well, I can tell you, Your Honor, that the evidence that the defendant was somewhere within the vicinity, and I apologize that that term can't be as... Well, we have testimony that provided for the police officer in the van. But was there any direct testimony on that issue? Or was that all elicited through the Marley testimony of the Brown statements to Marley regarding Leek? Any testimony regarding the defendant's presence at the scene came through Marley testifying as to what Brown... Marley himself did not witness the presence of Leek in the van or in the proximity of the scene. Is that your position? That's correct, Your Honor. Marley did testify that he did see Brown with another individual. However, he was not able to identify that individual as the defendant. What he testified to was that Brown had told him that he was with an officer, a Chicago police officer, the night of the shooting. And, of course, that's significant... Brown didn't testify. This was through Marley. So now we're dealing with the hearsay which either comes in because it's in furtherance of the conspiracy or will constitute erroneous admission or will be error. Certainly, Your Honor. So that's where we're at right now. Exactly. And the trial court, procedurally what happened in this case, is the state filed a motion in Lemonet to have the trial court rule on whether or not these statements would be admissible in the first instance. And their argument was that the co-conspirator exception to the hearsay rule would apply such that these statements could come in. And, of course, that exception applies if the state can establish, by a preponderance of the evidence, independent of the hearsay statements. So now the question is whether the testimony which was admissible to establish 117 phone messages between Brown and Leek the day before 30 on the day of the occurrence, that's one. The procurement of a policy by Leek on the life of Hamilton, the victim. Okay. The fact that established by at least one witness, if not two, depending on whether we agree with the admissibility of one of them. But we have Ned Hamilton testifying that Leek made threats. He said, I want to get Hamilton and kill him, or words to that effect, which also presumably came in through a second witness as well, the admissibility of which you're challenging. So we have at least one witness saying there was a threat, there was an insurance policy, there was a phone call, business association between Leek and the victim based on the monument company and business association based on the funeral home from which Leek was discharged just within a short chronological proximity to the shooting itself. But we don't have Leek on the premises except through hearsay. But we have these other factors through direct testimony, admissible testimony. Is that sufficient to create an inference of a conspiracy based on the notion that there was a motive established in the insurance policy? You're debating by saying, well, you can't recover, et cetera. You can talk about that if you like. But based on the extended phone conversations between the shooter and Leek, based on the established relationship and animosity between Leek and Hamilton, and based on the preliminary threats made directly to Ned Hamilton, if not also directly to another witness, wouldn't that be enough to establish by inference a conspiracy? And in which event, then, the hearsay statements that came in should only be analyzed, should only be of concern to us as to whether they were in furtherance of the conspiracy, but that the conspiracy itself has been independently established. Your Honor, the short answer to that question is no. I don't feel that the State made the requisite showing of a conspiracy such that the hearsay statements should have been admitted. And I appreciate Your Honor's question because you're getting to the heart of the issue, which is did the independent evidence establish that a conspiracy existed? And one point that I would like to make is it's not that an inference has to be raised that a conspiracy existed. The State has an obligation to make a showing by a preponderance of the evidence that a conspiracy existed. Well, that can be circumstantial, however, can't it? I would agree with that, Your Honor. And if we went with that, then, the problems that you have with Charmaine's cross-examination won't really matter because all she's useful for is to duplicate the testimony of Ned that she heard threats. Otherwise, she contributes nothing to the mix, other than the fact that she heard Leek express an intent to kill. Well, I think she comes into play more so in one of the other issues that we addressed in our brief. Didn't she testify that she observed Leek driving around their apartment one day? Charmaine, did she ever say to Hamilton that she saw Leek driving around, or did she say a car? The day of the shooting? No, at some time previous, at any time. Was there testimony about that? I don't recall off the top of my head. Well, then I might be mistaken. When we review the court concluded that it would allow statements of the co-conspirators. So when the court did that, are we reviewing the court's decision to allow that for an abuse of discretion or some other standard of review? That's an excellent question, Your Honor. In our brief, we have cited that it is, in fact, an abuse of discretion standard because that seems to be what the weight of authority suggests. But you asked for a de novo review. Well, there is a good faith reason for making that argument. An argument can be made that a de novo standard should be applied, and I know as recently as the Lovejoy case, and unfortunately I don't have the site offhand, but it says that generally a trial court's decision regarding admission of certain testimony is reviewed for an abuse of discretion. However, a defendant's claim that his Sixth Amendment confrontation rights were violated involves a question of law which is reviewed de novo. Well, would you say that when Justice Gordon reviewed those facts that that didn't establish by a preponderance of conspiracy? Your Honor, I would contend that it does not. All right. So that's not a preponderance. All right. And I'll go through the reasons why. All right. If it would please the court. With his presence, if there was the testimony that there was a police officer in the van, if that went into the mix, would that be sufficient? Again, Your Honor, that testimony is only coming through alphabetically. I know. That's why I put an effort for it. Certainly. Well, I suppose on the spot, having to look at all the evidence and just adding in that one factor, it would be significant if you had another witness come in and testify that they saw somebody they knew to be a police officer at the scene. However, we don't have that in this case. All we have is John Brown's hearsay statement coming in through Alfred Marley. That's why I left it out. Certainly. And that's why Alfred Marley's testimony is so prejudicial in this case. Well, it's prejudicial if you think that it would have been enough had it come in. Correct. Otherwise, whether it's prejudicial or not is no longer the question, but whether it's sufficient. Right. But turning back to the issue, because I do think it's the crux of the issue, whether or not the evidence, the independent evidence, was sufficient to show by preponderance of the evidence that a conspiracy existed between John Brown and the defendant, I would like to run through very briefly what the State is arguing that evidence consists of. I think there are three key pieces of evidence that the State is arguing shows that there was a conspiracy between John Brown and the defendant. The first evidence they cite is eyewitness testimony, which would suggest that this was a premeditated hit. And they cite eyewitness testimony, which suggests that the victim's vehicle was disabled immediately prior to the shooting. They point to the fact that a suspicious vehicle was seen circling the area shortly before the murder took place. And finally, they point to the fact that the shooters ambushed the victim wearing ski masks and gloves. However, the fact that this may have been a carefully thought out crime in no way connects the defendant, Edward Leak, to the commission of the shooting. It doesn't connect him to either of the shooters. Quite frankly, the fact that this may or may not have been a premeditated crime in no way shows conspiracy. But as part of the package, we don't look at these things individually, do we? I would agree with that, Your Honor. Aren't you kind of picking them out individually and saying, well this doesn't really support a conspiracy, therefore they haven't shown it. But actually, under the cases, we're not looking at an individual piece of evidence. We're looking at everything that was presented to determine whether that established by a preponderance. So what is the point of saying that this particular piece doesn't connect Leak? Well, Your Honor, I'm just going through each of the pieces of evidence. Right. But how does that support that this wasn't a conspiracy? It's not irrelevant. It's just not dispositive. But it's not irrelevant in the mix. I would agree with that. If anything, this shows a common plan or design on the part of the two shooters who committed the crime, which in this case would be Alfred Marley and John Brown. Now, the second piece of evidence, which I believe Justice Gordon already mentioned, would be the numerous phone calls that took place between the phone numbers that were listed to the defendant and a phone that was purchased by John Brown. First off, this does nothing other than establish that a person using Brown's phone placed calls to a person using the defendant's phone. So we have to make an inference, first of all, that, in fact, it was the defendant, Edward Leak, communicating with John Brown. Counsel, if I might interrupt you again, I think we will concede that none of the individual components by themselves are sufficient to establish a conspiracy. The question is whether, cumulatively, all of these factors viewed together, as Justice McBride suggested, whether that establishes the conspiracy. And since we're kind of short on time, you might want to deal with that. No, they don't, Your Honor, and I'll answer why. The phone calls do nothing more, at best, than arguably support a position that the two were associated. And case law is very clear that mere association between two parties is insufficient to establish a conspiracy. The motive issue. Motive is arguably very important where the identity of the accuser is at issue. But in this case, we know the people who shot and killed the victim. It was John Brown and Alfred Marley. No, but if it's a contract to have someone killed, the identity is clearly an issue. And that's what the case is about. Was this a contract to have an execution? And the identity of the person contracting is an issue. How can you say identity is not an issue? It is an issue, whether Leek is the guy and whether he contracted with them to have the person killed. I agree with you, Your Honor. However, apart from the fact that he had motive, arguably had motive, there was no other evidence. There was no evidence that payment was made. There was no. What about the evidence that the insurance company started getting calls about the claim on the policy? He wanted the money for the dead victim, didn't he? He did. But naturally, he did have a life insurance policy, and he was the named beneficiary on the victim. And a key point to remember in this case is that he was able to get the policy in part because the victim assented to him getting the policy. He had an insurable interest. That's correct, Your Honor. But we're going to look at this for an abuse of discretion, whether the court abused your discretion when she concluded that they had established by a preponderance that a conspiracy existed. That's correct, Your Honor. Although because we. Oh, all right. I'm sorry, but you are arguing for de novo. That is correct. That is the standard that we did sign our brief. So from that standpoint, you know, we may be locked in, but I do also recognize that this court has the authority to review an issue de novo if it deems it appropriate. And then once, if error is established, obviously then it would go through a harmless error analysis, whether or not the state can show beyond a reasonable doubt that the improperly admitted testimony. Because it is subject to the harmless error rule. Exactly. All right. So unless there are any other questions, I will reserve the remainder of my time for rebuttal. Thank you, counsel. Thank you. Mr. Connors. Good afternoon, Your Honor, and may it please the Court. Turning then to the only issue really addressed at this point in time, whether or not the admission of the co-conspirator statements was proper. The abuse discretion is standard, is relevant, and it bears noting that this was subject to a great deal of pre-trial litigation. The people and the defense both filed written motions fleshing out the contents of what John Brown's statement would have been, the basis for the admission. The circuit court ruled on that at X10 of the record, demonstrating a consideration of all of these factors. The conclusion that the circuit court reached, which was that the people had established a crime of fascist showing of a conspiracy, is buttressed by the record. If I may begin by discussing Justice Gordon's question with regards to what evidence there was putting the defendant at the scene at the time of the offense. Other than the question of hearsay. Other than the hearsay, yes, Your Honor. There are a number of things that did not come out with defense counsel. First of all, we have not just the van that was used to transport Marley, there's actually a defendant was seen in another vehicle, a maroon car, which was supposed to be the getaway vehicle. Was the defendant identified in the maroon car? Or was it simply an identification of a maroon car? The implication, again, I'm using the term. Let's not meld the two. If it's an implication, let's not deal with it on the question of direct evidence. The only evidence we have is that when Marley and Brown went together, not, the statement that is utilized is Brown's statement indicating, there's my guy, I'm going to go see him. So taking that apart, you still have Marley and Brown going to a location, Marley going to the maroon vehicle, engaging in a conversation in the vehicle, then Marley leaving and going to a separate van. They then committed the offense, fled together, at which point in time, Marley testified the plan was that they were to go to the McDonald's parking lot and meet up with the maroon car. So we there have the maroon car before the shooting. At best, it ties up, ties in a third party. Yes. To the event. It does tie in a third party. But it doesn't identify who that third party is. No. But, again, when taken together with the cell phone tower. Now, what has not been approached is the defendant's statement given to the assistant state's attorney. When the defendant initially indicated, I was at a different location that day, approximately 50 blocks away. The defendant was then confronted with a cell phone indicating, no, you are in this location, we can pinpoint by the cell phone tower. Well, that raises the question of whether that becomes affirmative evidence or simply impeachment. It is impeachment. It may neutralize, but is it affirmative evidence? To the extent the defendant attempted to establish the location somewhere else during the investigative process, it negates that. Now, the court heard substantive evidence that the cell phone tower tied to the location where the vehicle was. So, we now have cell phone records in that location, a vehicle where a third party, in this case, the implication being the defendant, was there before and after the shooting, then the exchange of phone calls. So, it's not merely two guys walking down the street. There is a plan where they originally went out, targeted the victim's vehicle. Defense counsel did attempt to delineate whether or not the vehicle was truly damaged, but we do know that from Marley's testimony, that was the plan. That's why the tow truck got there. That's what basically set up the shooting. So, we then have the two men working in concert together, fleeing together. We have Marley agreeing to a payment schedule. But Leak isn't among them. So, and that's our question. Yes. Leak would never be amongst them as long as he is the person who is basically pulling the strings. It makes no sense to retain somebody else to do your work for you, than to have him do it. Leak could have very easily coordinated this from another location farther away. The question is, there's no question here that you're in short measure on establishing Leak's participation in this event. The question is whether short is necessarily insufficient, or whether it barely makes it. But to talk to us about what is established as between Brown and Marley is not going to do much to further the inference that Leak was the third guy. When the question is posed whether or not there is evidence to demonstrate a conspiracy, barring the admission of the hearsay evidence, the people can point to certain agreements reached between the two shooters. And then external evidence. We have the statement made by defendant. We have telephone records. We have all of that evidence. We have defendant basically indicating his dissatisfaction. We have a motive. We have the insurance proceeds. We have the insurance policy. All of this evidence we've taken together. And as you point out, that there was a third guy. Yes. None of this is required beyond reasonable doubt for the admission of the hearsay statement. It is merely required for the conviction, not for the admission of the hearsay testimony. And therefore, when the hearsay testimony is at issue, you can draw upon all of this evidence. Justice McBride, you had originally asked about Ms. Ankle's testimony, whether or not she had seen the defendant driving at the scene. Well, she did around Thanksgiving. She had seen him previously. Thanksgiving prior to the murder. And there was one conversation between the victim and the defendant at that point. I mean, Ms. Ankle and the defendant, but not pertaining to this date. Yes. Therefore, this Court is aware that there was a demonstrable common scheme, a demonstrable establishment that two or more people intended to commit a crime. I mean, it's clear all three of the identities of the parties here. The question is whether or not there were any acts that were committed in the furthest of the conspiracy. And the people have established that meeting up the location, the agreement of a payment scheme, at least between the, I mean, between Brown and Marley, the plan to flee the scene together, the fact that they did actually commit the offense and attempt to flee together, all demonstrates that these acts were taken together and in a concert and in a common scheme to commit the offense of murder. No. This Court has no further questions. If people would rest upon brief with regards to the rest of the issues. Thank you, sir. A final word. Counsel. I appreciate the court's time. So I'll be very brief. Unlike several of the other exceptions to the hearsay rule, the co-conspirator exception is not based on indicia or evidence. Of reliability as to the out-of-court statements. Instead, what courts have held is that the reason we have this exception is because otherwise it would be difficult, if not almost impossible, especially in certain cases for the prosecution to prove the existence of a conspiracy. But that only emphasizes why this initial threshold inquiry is so important. I believe what the state is asking you to do is to eviscerate the protections which have been put in place that ensures the defendant's right to a fair trial, which in this instance is state, if you're going to have this rank hearsay come in that doesn't have the indicia of reliability that the other exceptions have, which is why we let the statements in, you have to show by a preponderance of the evidence that a conspiracy existed in the first place. And in this case, they simply did not meet that burden. Basically what they have are phone calls. Phone calls and motive. And I respectfully submit to the court that phone calls and motive don't show by a preponderance of the evidence that they had a common plan to achieve a common objective and that leak, or that the defendant in this case committed any acts to further the conspiracy. So with that, unless there are any other questions of the panel, we respectfully ask that they be excluded. Yes. Thank you both. The case will be.